[Civ. No. 31555.   Second Dist., Div. Three.   July 26, 1968.]

HELYN M. TREU et al., Plaintiffs and Appellants, v. GAR-RETT CORPORATION, Defendant and Respondent.

Julian Caplan and Richard J. Dolwig for Plaintiffs and Appellants.

O'Melveny & Myers and Rodney K. Potter for Defendant and Respondent.

SHINN, J.*—Helyn M. Treu and Charles O. Morris, individually and doing business as Williamsgrip Company,

*Retired Presiding Justice of the Court of Appeal sitting under assign-ment by the Chairman of the Judicial Council.

a limited partnership, instituted the present action against The Garrett Corporation, Eli Barlow and Bruce L. Farish seeking to recover the amount of royalties claimed to be due from defendant Garrett under an agreement between certain members of the partnership and Garrett by which the latter was licensed under a patent then owned by the partners. Barlow and Farish were named as defendants only because they refused to join as plaintiffs. Findings and judgment were in favor of Garrett except for the sum of $178.10 for which plaintiffs were given judgment as the balance of royalties due which were not disputed by Garrett. Plaintiffs appeal.

The evidence was almost entirely documentary. The single factual question was resolved in favor of Garrett. A statement of the material and essential facts follows.

February 11, 1941, T. O. Williams obtained a patent (No. 2,231,310) on a device known as a "clamp connector." November 3, 1942, Williams assigned the exclusive rights in the patent to a partnership (Williamsgrip Company) composed of W. K. McLain, general partner, and T. O. Williams, E. Barlow and C. O. Morris, limited partners. By October 16, 1943, B. L. Farish had come in as a limited partner and on that date the five partners individually and as a partnership entered into an exclusive licensing agreement with The Garrett Corporation as licensee. By December 1948 the partners were Helyn Treu, Eli Barlow, C. O. Morris and B. L. Farish and they continued to comprise the partnership.

In October 1943 Morris became an employee of Garrett and on March 28, 1944, he entered into an employees' agreement with AiResearch Manufacturing Company, a subsidiary of Garrett, which provided that the contract stated the terms under which he had entered the service of Garrett. He was employed to develop the Williamsgrip connector and to design improvements thereon. His employment contract provided that any inventions he made while thus employed would belong to Garrett. He remained in his employment until November 1948.

Patent applications were filed upon four inventions of Morris while he was in the employ of Garrett, among them No. 2,466,997, which patented a cable connector device that was an improvement covered by the Williams patent. Morris assigned this patent application to Garrett.

The Williams patent expired February 11, 1958. Garrett paid royalties accruing to that date; it has made sales of the device covered by No. 2,466,997 but has paid no royalties on

sales made after February 11, 1958. The action is for recovery of royalties of 5 percent of the receipts from those sales and 50 percent of royalties received by Garrett from a sublicensee. Barlow filed an answer denying that Garrett is indebted to the partners. Farish defaulted.

Appellants' claim is that the Morris invention (No. 2,466,-997) patented as aforesaid, was an improvement of the Williams patent, and was covered by the license to Garrett and the royalty agreement. Royalties are claimed through the life of that patent which expired in 1966.

■ Respondent Garrett contends that the partnership did not own or control or have an interest in the improvement invented by Morris, that the same belonged exclusively to it as the employer of Morris for the purpose of inventing improvements and by virtue of his employment contract; the royalty obligation was limited to the life of the Williams patent and expired February 11, 1958.

For an answer to the conflicting contentions reference must be had to the wording of the license agreement, which reads in material part: ''1. The LICENSORS hereby license and grant to the LICENSEE the sole and exclusive right to manufacture, use and sell throughout the world devices embodying the invention claimed in the aforesaid patent and disclosed and claimed in any and all applications or patents for improvement thereof which are owned or controlled in whole or in part by the LICENSORS.

''The word 'improvement' as used in this agreement shall be interpreted to mean not only those devices that are covered by a claim of the patents coming within the scope of this agreement but also devices which serve the same purpose.''

The parties are in agreement that their rights are governed by the terms of the licensing agreement and the legal consequences of the patent of the improvement by Morris while in the employ of Garrett.

The court found: ''Said license agreement [of October 16, 1943] expired February 11, 1958 and no royalties became due or payable to plaintiffs on account of the sale by defendant The Garrett Corporation of any of the Williamsgrip devices after said date.'' This factual finding of nonliability impliedly embraces findings of all facts consistent therewith.

The crucial question is whether the partnership ''owned or controlled in whole or in part'' the applications and patents for the improvements invented by Morris on which patent applications were filed while he was employed by Garrett. We

believe appellants have failed to come forward with a sound reason for assailing the implied finding that the partnership had no such interest.

In their opening brief appellants say "Since the Morris patent is an improvement on the Williams patent (par. (aa)), and since patents for improvements owned or controlled in whole or in part by *any of the partners* are licensed to Garrett under paragraph 1, then the term of the license continued under paragraph 2 for the life of the Morris patent." (Italics added.) In their closing brief they say "The rights of plaintiffs in this action arise out of the license agreement and its specific provisions for the payment of royalties on improvements of *any licensor* until the expiration of the patent on such improvements." (Italics added.) Appellants then argue that since Morris was one of the licensors, royalties must be paid upon any improvements invented and patented by him, inasmuch as the rights of the partnership under the licensing agreement are superior to any rights which Garrett could acquire under the invention and patent of the improvement.

What appellants fail to explain is how the partners owned or controlled any invention perfected by Morris. In their opening brief they claim the improvement was invented by Morris while he was in their employ. If this had been the fact the partnership would have had a valid claim upon it, but plaintiffs produced no evidence that it was the fact. The assertion that the improvement was invented while Morris was employed by the partnership is not borne out by the testimony of Morris to which plaintiffs refer. In oral argument it was asserted by plaintiffs that there was no evidence whatever that the improvement was invented by Morris while he was employed by Garrett. But evidence of that fact is found in the testimony of Morris, referred to by defendant, that while he was in the employ of Garret he perfected the designs which were embodied in patent No. 2,466,997 and that as a result of his inventive effort the improvements were "refined or brought to further development to the stage where patent applications were in fact processed." It is noteworthy that application No. 2,466,997 was not filed until May 5, 1945, when Morris had been in the employ of Garrett for a year and a half. Mr. Barlow, a partner and financial supporter, through his deposition testified that the partnership tried to put together a cable connector but that its attempts were not successful. The undisputed facts were that the partners had ex-

hausted their resources and that for want of additional money their efforts stopped short of developing a usable product. It was at this stage that they went to Garrett and negotiated a licensing agreement. The implied finding that the cable connector improvement was not invented by Morris until he was in the employ of Garrett had ample support in the evidence.

In their closing brief appellants say their contentions do not rest upon any provision of the partnership agreement. And quite oddly it is said ". . . the time when Morris made his invention is not controlling as to the outcome of this suit. . . ." and further, "The license agreement itself provides that any improvements owned or controlled by the licensors is subject to the agreement."

Pursuing their theory that they owned the Morris invention or an interest in it, appellants pose three hypothetical propositions, one upon the assumption that Morris made the invention after he had left Garrett, another assuming Morris had never worked for Garrett, and a third assuming that a licensor other than Morris and unemployed by Garrett had made the invention, and it is argued that in each case Garrett would have had to pay royalties upon the patented improvement.

The argument is predicated upon the unfounded and false assumption that any improvement of the Williams patent made by any one of the licensors at any time would belong to the partnership. This is the error which underlies their claim of ownership of the invention in question and the assumption is inconsistent with their admission that their claims are not based upon the partnership agreement.

The fact is that the invention was made by Morris while in the employment of Garrett for the express purpose of developing the Williams patent. This fact, alone, would give Garrett ownership of the invention and the patent, since they were the very things for which Morris was hired and paid. (*Aero Bolt & Screw Co.* v. *Iaia,* 180 Cal.App.2d 728, 736 [5 Cal.Rptr. 53] ; 31 So.Cal.L.Rev. 38.)

Additionally, whatever rights Morris had in the invention and patent were assigned to Garrett. The assignment had a consideration in the contract of employment, which specifically provided for ownership by Garrett of improvements invented by Morris. When Morris left his employment with the partnership he took knowledge, experience and ideas which were his own. He had not yet invented a successful, usable cable connector as an improvement upon the Williams patent. He had developed an ability to invent improvements, and whatever he created later in the application of that ability

was his own. That ownership, however, was a fleeting thing which he had bargained away even before it became a reality. He had a sufficient interest to enable him to apply for a patent and to assign the same to Garrett, but the instant the improvement was invented it became the exclusive property of Garrett. Since the partnership had and could have no interest in the invention, Garrett had no duty to pay royalties to the partnership after the expiration of the Williams patent.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.